This matter is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, wherein defendant-appellant, Lawrence K. Patterson, was convicted of aggravated robbery, a violation of R.C. 2911.01(A)(1).
The following facts are relevant to this appeal. On September 16, 1996, an indictment was filed on one count of aggravated robbery with a gun specification, a violation of R.C. 2911.01(A)(1) and R.C. 2941.145, against appellant and Jermaine McNeeley. The indictment stems from the September 3, 1996 robbery of Nations Credit Financial Services ("Nations Credit"), located on Reynolds Road in Toledo, Lucas County, Ohio. The case against appellant proceeded to a jury trial on September 8, 1997.[1]
At trial, the undisputed facts revealed the following. On September 3, 1996, at approximately 5:30 p.m., two masked men entered Nations Credit and ordered employee, Crystal White, and customer, Carol Woods, to get down on the floor. White got down on the floor and did not look up until the men had left the office. Woods did not immediately respond and one of the men struck her on the side of her head with a gun. She fell to the floor and did not view the assailants again.
White told one of the men where the money was kept. Once they got the money, they tied the women' wrists together with tape and their ankles with telephone cord.
After the men left the office, they ran south to Norwich Street and continued west. There, a third man, in a grey Chevrolet Caprice with a Michigan license plate, picked them up and proceeded south on Reynolds Road. The car was later identified as McNeeley's.
Appellant was arrested for his involvement in the robbery based upon McNeeley's statements against him and an identification of him, by Woods, from a photograph in the Toledo Blade. A third suspect, Gregory Battle, was arrested and subsequently released.
On appeal, appellant raises the following assignment of error:
 "THE TRIAL COURT ERRED IN PERMITTING THE JURY'S GUILTY VERDICT, WHICH WAS BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE. DUE PROCESS CLAUSE, FOURTEENTH AMENDMENT, UNITED STATES CONSTITUTION; SECTION 16, ARTICLE I AND SECTION 3(B)(3), ARTICLE IV, OHIO CONSTITUTION; R.C. 2901.05(A). (T.p. 731, 733.)"
In his sole assignment of error, appellant argues that the evidence was insufficient to sustain his conviction because neither Woods nor McNeeley were credible witnesses, and letters allegedly written by appellant and admitted into evidence were exculpatory, rather than inculpatory. Appellant also asserts that his conviction was against the manifest weight of the evidence.
The Supreme Court of Ohio has set forth this court's standard of review as to the sufficiency of evidence:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
In order to be convicted of aggravated robbery, the state must prove beyond a reasonable doubt that appellant knowingly obtained property owned by another without it or her consent and for the purpose of depriving it or her of that property, and that appellant, while doing so, had a deadly weapon on or about his person or under his control; or, alternatively, aided and/or abetted another in the commission of an aggravated robbery. R.C. 2911.01; see, 4 Ohio Jury Instructions (1997), Sections 511. 01 and 523.03.
In the instant case, appellant argues that there was insufficient evidence to prove that appellant was one of the perpetrators of the Nations Credit robbery. Appellant contends that there is no credible eyewitness identification and, further, McNeeley's testimony is unreliable because it was offered in order to get a reduced sentence.
At trial, Nations Credit employee, Crystal White, testified that on the date of the robbery a tall thin man with a gun entered Nations Credit and ordered Woods and she to get down on the floor. A second man, shorter and stockier, then entered. After the second man entered, Woods was struck with the gun.
White testified that both men were wearing long pants, sweatshirts and gloves. She could not see their eyes at all and believes they were wearing dark glasses. Later, during a police line-up, White was unable to recognize either suspect's physical appearance or voice.
Carol Woods, the customer at Nations Credit during the robbery, testified that a masked man walked into Nations Credit and stood next to her. She stated that he had a hood over his head and that his mask went from the bridge of his nose down. He did not have on sunglasses. She described his eyes as being "bugged out." She identified him as a six foot tall, thin black man. She stated that she only saw the shadow of the second man but that he was approximately five foot eight inches tall and had a medium build.
When the police subsequently telephoned Woods to come in for a line-up, she indicated that she had already identified appellant from an article in the Toledo Blade. The article discussed the robbery and had photographs of three suspects including appellant. Woods identified appellant as the individual who struck her with the gun.
Co-defendant Jermaine McNeeley testified that he and his girlfriend came to Toledo at the end of August, from Inkster, Michigan. They had been staying with his sister, Marlese McNeeley, until they could find employment and rent an apartment. McNeeley met up with Gregory Battle and appellant at Marlese's apartment. He testified that he had met Battle before, but not appellant, and that the two apparently had been driving back and forth from Inkster in appellant's black Mustang.
On September 3, 1997, the date of the robbery, McNeeley testified that Battle asked him to drive him to an "establishment" so he could get some money. Upon arrival, Battle pulled a black bag from the back and, from it, produced masks and a gun. He gave one of the masks to appellant who was sitting in the back seat.
McNeeley stated that he was instructed to pull around back and wait for them. He drove south and parked behind an adjacent office building. He then smoked some crack cocaine and soon realized that appellant and Battle had run right past him. He drove around and met them at the west end of a side street. Battle gave him approximately $65 of the robbery money.
A few days after the robbery, McNeeley was taken into custody for questioning. At first, he told police that he had been at the shopping mall with his girlfriend at the time of the robbery and that someone must have taken his car. When McNeeley left to use the restroom his girlfriend had given the police an inconsistent statement and McNeeley was forced to admit his involvement in the robbery.
Marlese McNeeley, Jermaine McNeeley's sister, testified that appellant, McNeeley and Battle were at her apartment on the day of the robbery and all left together sometime in the evening.
At trial, several police officers testified as to the descriptions of the suspects given by Woods and White, and the statement made by McNeeley. Neighbors of Nations Credit also testified regarding the two men running and the Chevrolet Caprice that picked them up.
Finally, three letters were admitted into evidence which were apparently written by appellant and delivered to McNeeley in the Lucas County Jail. The first letter states, in part:
 "Bottom line if I have to B mail to stop you from not bein about the business of havin them drop these charges then if you roll ill roll. I dont know just like you dont know if im a sell out We will just have to trust and ride it out cuz lawyer said if you dont make anymore statements all is well" [sic]
In the second letter, appellant denies being one of the two masked men during the robbery; however, he does not deny his involvement. Appellant states:
 "Are you goin to cop out and test against everybody plus your statement you was driver me and my cuz was the ones what kind of ho shit is that Top off you tryed to escape cause you feared for your life" [sic]
This court has carefully reviewed the evidence presented at trial. Viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of aggravated robbery proven beyond a reasonable doubt.
Appellant also argues that the conviction was against the manifest weight of the evidence. In State v. Thompkins (1997),78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that the "legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court explained that while an appellate court may determine that a judgment is sustained by sufficient evidence, it may still conclude that the judgment is against the weight of the evidence. (Citation omitted.) Id. at 387.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis in original.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "disagrees with the factfinder's resolution of the conflicting testimony." Id. In reviewing the entire record, an appellate court:
 "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Upon review of all the evidence of this case as a whole, we cannot say that the jury lost its way and created a manifest miscarriage of justice. Appellant's conviction for aggravated robbery is not against the manifest weight of the evidence. Accordingly, appellant's assignment of error is found not well-taken.
On consideration whereof, the court finds that the appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is to pay the costs of this appeal.
JUDGMENT AFFIRMED.
 State v. Patterson L-97-1377
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.________ _______________________________ JUDGE
James R. Sherck, J.__________ _______________________________ JUDGE
Mark L. Pietrykowski, J._____ _______________________________ JUDGE CONCUR.
[1] As to the gun specification, the jury found appellant not guilty.